Plaintiffs are seeking to recover $3475 from defendant. They allege they are the owners of land located in Sections 13 and 24, Township 9 North, Range 16 West, Caddo Parish, Louisiana. They further allege that defendant moved a portable sawmill into the vicinity of this land on or about September 15, 1942 and soon thereafter began to cut and remove timber from their land. They allege defendant had been instructed not to trespass on the property but, regardless of the warning, he did cut and remove both hardwood and pulp wood and carried them away in excess of 86,000 feet of timber and 20 cords of pulp wood.
Plaintiffs also allege that defendant destroyed and removed from their property all trees of value because of their beauty and enhancement of the land; and plaintiffs allege their damage to be as follows:
Value of timber cut and carried away ............................... $1300.00
Damage to landscape and value of land defaced by removal of trees of scenic beauty ................... $2000.00
Plaintiffs alleged their damage because they were forced to have the land surveyed in order to estimate the amount of timber removed therefrom by defendant, and paid an engineer $125 for surveying it, and were forced to pay a timber expert $100 to estimate the amount of timber cut and removed by defendant. Plaintiffs also claim attorney's fees for their lawyer to institute and try this suit in the sum of $250.
Defendant filed an exception of no right of action to that part of the petition relating to damages other than the value of the timber cut and removed and also a motion to strike from the petition the articles dealing therewith. The lower Court sustained the exception of no right of action to that part of the petition dealing with damages, other than for cutting and removing the timber.
In answer defendant admitted that he operated a portable sawmill in the vicinity of plaintiffs' property, but denied that he had cut or removed any timber from plaintiffs' land. The lower Court in a written opinion set aside its ruling on the exception, in so far as it applied to the fees of the engineer and timber estimator, and reserved to plaintiffs the right to proceed by rule to have their fees fixed, otherwise it reaffirmed its ruling on the exception. It granted judgment for plaintiffs for timber cut and removed in the sum of $258, with legal interest thereon from September 20, 1943 until paid.
Defendant is appealing from this judgment and plaintiffs have answered the appeal praying that the judgment be increased to the amount sued for, to-wit, $3475.
Plaintiffs amended their answer to the appeal alleging that their prayer for judgment be increased to $3475 was made in error, and they only intended to pray for an increase to $1475; and that when the exception was sustained below to the items sued for aggregating $2000, they accepted it and admitted the claims constituting the $2000 were fictitious. The lower Court accepted the estimate made by the expert timber estimator and found that defendant had cut and removed from plaintiffs' land 86,000 feet of timber, and that its value as standing timber was $3 per thousand. It rejected plaintiffs' contention that they were *Page 64 
entitled to the manufactured price of the lumber made from the timber, inferentially holding that defendant was not in bad faith in cutting the timber.
The expert who surveyed plaintiffs' land found it to consist of three tracts, one of 131/3 acres in Section 13, another of 53 1/3 acres in Section 13, and one of 106 2/3 acres in Section 24, all in Township 19 North, Range 16 West, Caddo Parish, Louisiana. Defendant purchased the timber on lands adjoining plaintiffs' land on both the south and east and set up a portable sawmill to cut the timber. Plaintiffs offered testimony to show that 86,000 feet of timber were cut and removed from plaintiffs' land by defendant. The testimony also shows that the land on which defendant bought the timber and plaintiffs' land were previously owned by one man, named Hearne, and as the Elders died the children and grandchildren inherited the land and divided it amongst themselves, the entire property being commonly known and spoken of as the "Hearne Property". The divisions made of the different tracts by the heirs were made on paper and no survey ever run, there being no physical marks to show the dividing lines between the different properties owned by the different heirs. Defendant relied upon a woodsman to locate the lines for the purpose of cutting the timber he had purchased, but it is clear from the record that he relied upon a woodsman who did not know the lines and was not capable of determining them, and it is possible, as well as probable, that defendant cut some of plaintiffs' timber through mistake as to the lines, but the facts adduced in this case are not sufficient to base a judgment on for any amount of timber cut.
Plaintiffs rely on the testimony of their agent that he saw defendant's employees cut and remove some timber from the land owned by plaintiffs, but he does not attempt to say how much was cut, also on the testimony of an expert timber estimator who was of the opinion approximately 86,000 feet of timber were cut and removed from plaintiffs' land. He stated, however, that his estimate could not be accurate and was of the opinion the stumps which he used in making his estimate had been cut not more than ten months before. Two witnesses for defendant, both of whom were timber men of many years' experience, testified that in their opinion the timber cut, as shown by the stumps, had been cut many years before. Defendant's woodsman and other employees testified that they did not cut across the line, but it was very easy for these employees to have been mistaken for they did not know where the lines were and cut only where the defendant's woodsman told them to cut.
There is evidence in the record to show that timber had been cut on plaintiffs' land on several occasions before defendant set up the mill.
The evidence in the record is not convincing and, as observed by the lower Court, there is much evidence which could have enlightened the Court which was not offered. The testimony adduced is not satisfactory and not sufficient to base a judgment on for any specific amount.
We therefore conclude that in order that justice might be done between the parties litigant, that the judgment of the lower Court be set aside and plaintiffs' suit dismissed as of nonsuit, casting plaintiffs for costs. It is so ordered and decreed.